

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -2  PM 4: 21

LORETTA G. WHYTE
CLERK

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

WADELL FULTZ                                             CIVIL ACTION

VERSUS                                                  NO. 05-176

JO ANNE B. BARNHART,                                    SECTION "F" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION


### FINDINGS AND RECOMMENDATION

Plaintiff, Wadell Fultz, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for

Supplemental Security Income benefits ("SSI") under Title XVI of the Act.  42 U.S.C.

§§ 405(g), 1381a.  This matter was referred to a United States Magistrate Judge pursuant

to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

As ordered, plaintiff filed a timely memorandum of facts and law.  Record Doc.

No. 11.  Defendant filed a timely reply memorandum.  Record Doc. No. 12.

___ Fee_____
___ Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

I.    PROCEDURAL HISTORY

Fultz filed an application for SSI on April 8, 2002.  He alleged disability since January 1, 1989[1] because of nervousness and a learning disorder.  (Tr. 13, 32-35, 37).  After his application was denied, he requested a hearing before an Administrative Law Judge ("ALJ").  On June 26, 2003, the ALJ denied plaintiff's application.  (Tr. 13-19).

On July 23, 2004, the Appeals Council granted plaintiff's request for review and remanded the matter to the ALJ because the hearing tape could not be located, which meant that the record was incomplete.  (Tr. 8-9).  The hearing tape was apparently located, since the transcript of the hearing appears in the record.  The Appeals Council then denied review on December 3, 2004 (Tr. 3-5) and the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    The ALJ erred by failing to find that plaintiff meets Listing 12.05 for mental retardation.

B.    The ALJ erred by failing to consider all of plaintiff's limitations.

---

[1] SSI benefits are not payable for a time period before the application date, so plaintiff would only be entitled to benefits beginning the month after his application date of April 8, 2002, if he were found to be disabled.  20 C.F.R. § 416.335 (2004).

III.   <u>ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL</u>

The ALJ made the following relevant findings:

1.   Plaintiff has a learning disorder, which is a severe impairment.

2.   His impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

3.   Claimant's allegations regarding his limitations are not credible.

4.   Fultz has the residual functional capacity to perform work in which interpersonal contact is incidental, little independent judgment is needed and tasks are learned and performed by rote. He can understand and follow simple instructions and perform simple tasks. He can sustain only limited contact with the public and he reacts poorly to criticism and frustration. He has a marked limitation in dealing with supervisors.

5.   Plaintiff has no past relevant work.

6.   Considering Fultz's age, education and work experience, and the type of work that he is functionally capable of performing, there are a significant number of jobs in the national and state economies that he is capable of performing, including work as a stocker and in housekeeping.

(Tr. 18-19).

IV.   <u>ANALYSIS</u>

A.   <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the

3

Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the

Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2004). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Newton, 209 F.3d at 453. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

---

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

B.    Factual Background

Plaintiff testified that he was 29 years old on the date of the hearing and lived with his grandmother and his 20-year-old brother.  He said that he has never had a driver's license because he cannot pass the driver's test.  (Tr. 247-48).  He stated that he can read and write a little and can read certain things in the newspaper.  He said he had been in special education classes in school and had lived at a residential school facility where they were trying to help him learn more.  (Tr. 248).

Fultz said the school taught him reading and math and how to swim.  He stated that the school did not teach him how to fill out a job application.  Fultz testified that he had been sent to the "mental place" school because he had violated his probation.  (Tr. 249).

Plaintiff said he had seen a couple of doctors in New Orleans, Hammond and Independence, Louisiana, because of pain in one side of his head.  (Tr. 249-50).  He stated that his head hurts on one side.  He said that, when it happens, he has to hold his head down and the pain will not go away for a couple of hours, and then it comes back again.  He said his doctors have not been able to find out what is causing the pain.

Fultz testified that the only type of work he has ever done has been to cut grass, but he had to stop because his head hurts.  He said he has never worked anywhere that

7

required him to begin work on time. (Tr. 250). He stated that he cannot do other types of work because of the pain in his head.

Plaintiff testified that he used to receive benefits but they were cut off when he went to prison. He said that he was on probation for a term of five years. He was not sure for what crime he was convicted but thought it was for possession of stolen things. (Tr. 251). He testified that he did not work while he was in prison but just went back and forth to the doctor. He said he was in prison for more than two years and was released in 1999. He stated that he has not been in any trouble with the law since his release.

Fultz said he also has seen a doctor recently because his ankle swells up. He stated that his ankle had been x-rayed and he had been told there was nothing wrong with it, but it swells up whenever he walks on it. He testified that he takes medication, which reduces the swelling for two to three hours. (Tr. 252).

Plaintiff stated that he does nothing but sit around the house. He said he does some chores like cleaning the toilet but does not cook or shop for groceries. He testified that he can make a sandwich and prepare food in the microwave, that his grandmother and brother do the grocery shopping and that he sometimes goes with them. He stated that he does not go to church, has no friends and does not visit anyone. (Tr. 253-54).

He said that he never liked hanging around with other people because he might get into an argument with them.

Fultz testified that he can take care of his own personal needs and has never lived alone.  He said he has never applied for a job and he knows he cannot work because of his headaches, swollen feet and other "stuff."  He stated that he had been incarcerated in Amite, Louisiana.  (Tr. 254).

Plaintiff testified that he only went to school through the ninth grade and did not finish because he was sent to the mental health hospital.  He said that he had been in special education classes and that three or four people would help him every day in school.  (Tr. 255).  He stated that he had never really had a girlfriend and that he had only had friends who were locked up with him in the mental health facility.  He reiterated his opinion that he cannot work because his head hurts and his doctors cannot figure out what causes the headaches.  (Tr. 256).

Fultz stated that he injured his eye when he tripped and fell, hitting a pair of pliers that were on the ground.  (Tr. 257).  He said he takes some medications.  Plaintiff's attorney showed the ALJ some medication bottles. (Tr. 257-58). Fultz had prescriptions dated April 18, 2003 for ibuprofen 400, every four to six hours for pain, with no refills,

and hydrocodone ADAP, every four to six hours for pain, with one refill. (Tr. 258). He also had an old sample bottle of Vioxx 12.5. (Tr. 258-59).

Plaintiff said his doctor had made an appointment for him to see a psychiatrist in Hammond, but he had not received the appointment information in the mail yet. He stated that he has not seen any doctor regularly for psychotherapy. (Tr. 259).

C.    Vocational Expert Testimony

The ALJ posed a hypothetical to Kelly Roberts, a vocational expert, of a claimant with a ninth-grade special education whose interpersonal contact should be only incidental to the work performed, such as contact with co-workers but not with the public; who can learn and perform tasks by rote with few variables and little independent judgment; and who is limited to simple tasks and instructions. (Tr. 260). Roberts testified that unskilled jobs are available for an individual with those abilities and restrictions, including stock and inventory clerk, miscellaneous food preparation occupations, maids and housemen. (Tr. 261).

Plaintiff's attorney posed a hypothetical with the additional restriction that the claimant overestimates his own ability, reacts very poorly to criticism and frustration and has a marked limitation in his ability to deal with a supervisor. Roberts stated that the marked limitation in dealing with supervisors would impact the food preparation

positions because the worker would be in a kitchen constantly going back and forth. She said the miscellaneous food preparation jobs would be reduced by 70 percent.

The vocational expert testified that the marked limitation would not impact the housekeeping jobs in which the tasks are set and the worker does not have much interaction with a supervisor. She testified that the availability of stock and inventory clerk positions would probably be reduced by 50 percent, because some jobs involve specific tasks and others have more supervisory interaction. (Tr. 262-63).

Plaintiff's attorney then added to the hypothetical a moderate limitation in ability to complete a normal work day and week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. Roberts testified that this would not create any additional impact beyond the previous hypothetical. (Tr. 263).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 15-16). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections, and highlights noted below.

11

E.      Plaintiff's Appeal

       1.      *Whether the ALJ erred by failing to find that plaintiff meets Listing 12.05 for mental retardation.*

The ALJ found at the fifth step of the sequential evaluation that Fultz has the residual functional capacity to perform work with the restrictions noted in her opinion and that jobs exist in significant numbers that plaintiff can perform.  Plaintiff contends that the ALJ erred by failing to find at the third step that he meets Listing 12.05 for mental retardation.  He argues that the ALJ's failure to discuss the evidence specifically in light of Listing 12.05 and her conclusory statement that his impairments do not meet or medically equal any of the listings renders her opinion inadequate as a matter of law.

To the extent Fultz is arguing that the ALJ made a procedural error by not discussing Listing 12.05 specifically, an ALJ does not commit reversible error by proceeding to a particular step in the sequential evaluation process, thus making by inference a judgment that the prior steps were not determinative.  Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Hernandez v. Heckler, 704 F.2d 857, 860 (5th Cir. 1983); Sartain v. Apfel, No. 99-1596, 2000 WL 193067, at *4 (E.D. La. Feb. 16, 2000) (Mitchell, J.).

It is clear in the Fifth Circuit that "procedural perfection in administrative proceedings is not required and procedural improprieties will constitute a basis for

remand only if they would cast into doubt the existence of substantial evidence to support the decision." Ferguson v. Barnhart, No. 02-849, 2003 WL 21277130, at *1 (E.D. La. May 30, 2003) (Duval, J.) (citing Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988) (citing Mays, 837 F.2d at 1364); accord Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989). The ALJ's failure to discuss Listing 12.05 expressly is not error that prejudices Fultz's substantive rights, Morris, 864 F.2d at 335; Sartain, 2000 WL 193067, at *4, because the ALJ's finding that plaintiff does not meet or equal the listing is supported by substantial evidence.

Under Listing 12.05, a person may be disabled by mental retardation, which is defined as "a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Although the ALJ did not specifically mention Listing 12.05 in her opinion, she expressly found that Fultz did not meet the severity criteria of that listing, which requires that the claimant exhibit two of the four limitations recited in the listing. Id. § 12.05(D). The ALJ specifically found that Fultz did not have any of the four limitations. Thus, contrary to plaintiff's argument, the ALJ did consider Listing 12.05.

Nonetheless, Fultz contends that he meets the level of severity that qualifies him as disabled under subparagraph (C) of the listing, which requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." Id. § 12.05(C).

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990); accord Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990).

Plaintiff's valid IQ scores of 69 verbal, 60 performance and 66 full scale in 1991, when he was younger than age 22, satisfy the first prong of Listing 12.05 and the first requirement of subparagraph (C). However, substantial evidence does not support plaintiff's contention that he also suffers from "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

Whether an impairment or combination of impairments meets or is equivalent to a listing is a medical question that can be answered only by medical evidence. Id. §§ 404.1526(b), 416.926(b); Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990); Dickerson v. Chater, No. 95-4053-SAC, 1995 WL 783631, at *3 (D. Kan. Dec. 22,

1995); <u>Thigpen v. Shalala</u>, No. 94-C-1563, 1995 WL 151838, at *15 (N.D. Ill. Apr. 3, 1995).

Fultz correctly states that medical records from 1990 and 1991 indicate that his psychologist raised the "likelihood" or possibility of an organic brain syndrome when he was in school and suggested a differential diagnosis of "rule out organic brain syndrome." (Tr. 103, 106, 185). Despite this possibility, Fultz was never tested any further or treated for an organic brain syndrome. Although earlier school reports suggested that Fultz was mildly mentally retarded, his individual integrated evaluation team, which included psychologist Milton S. Rhea, Ph.D., found a discrepancy between that diagnosis, his other evaluations, interviews, observations, testing and reports, and his current testing. The team found on October 29, 1990 that the more appropriate diagnosis was learning disorder. (Tr. 186, 191, 198).

Fultz contends that test results from a consultative psychological evaluation by Brian G. Murphy, Ph.D., on June 28, 2002 "confirmed Plaintiff's earlier evaluation results from the 1990 evaluation when Plaintiff was diagnosed with possible organic brain syndrome." Plaintiff's memorandum, Record Doc. No. 11, at p.9. This is a gross misstatement of Dr. Murphy's opinion.

Dr. Murphy administered an IQ test to Fultz that resulted in scores of less than 48 verbal, less than 47 performance and less than 45 full scale.  However, he found the results "certainly questionable if not frankly totally and entirely invalid" because plaintiff was uncooperative and unresponsive.  He noted that, if the results were valid, he would have to conclude that Fultz has "very serious neurological problems," but that plaintiff "was very unconvincing today in terms of the way he presented."  (Tr. 200).  After Dr. Murphy described in detail Fultz's odd and nonresponsive behavior, he said he

> thought . . . at this point . . . that the patient was putting on quite a show.
> Then again, individuals who have certain types of organic brain syndromes, mostly those who have alcohol and drug dependency problems, do have some tactile hallucinations and feel compelled to scratch themselves.  I did think there was something of a faint smell of alcohol on the gentleman's breath but this of course cannot be confirmed.  If this were not an SSI eligibility determination evaluation and if it were determined that there was no secondary gain to be accomplished, I would have to think in terms of this man's being very psychotic.  <u>Because there is a secondary gain to be accomplished, I was more inclined to believe that the patient was being disingenuous and was putting on a show.</u>

(Tr. 201-02) (emphasis added).  Dr. Murphy continued to explain why his observation of Fultz's additional behaviors, his discussion with the neighbor who had accompanied Fultz to the interview and his conversation with another patient in the waiting room who had observed Fultz interacting with the neighbor led him to find that both Fultz and the neighbor were unbelievable and seemed to be deliberately misrepresenting Fultz's

impairment. (Tr. 202, 203). Dr. Murphy found that intellectual testing and mental status

assay "proved to be an insurmountable task for the reasons outlined above." (Tr. 202).

Ultimately, Dr. Murphy discussed two possible theories for plaintiff's behavior.

> First and most likely, the gentleman was just simply putting on an
> act for secondary gain purposes. I have never seen anyone who presented
> as this fellow in all of my years of working with very disturbed psychiatric
> patients. Indeed, he seemed to be quite unbelievable. . . . I think that there
> is probably about a ninety to ninety-five percent likelihood that this fellow
> has just simply put on a show today.

> As a second alternative, we could be dealing with some sort of
> organic brain syndrome.   I have seen patients that have tactile
> hallucinations and they feel compelled to continuously scratch themselves.
> Usually, this would be in a state of extreme intoxication. I did think that
> I perhaps smelled alcohol on this man's breath. His neighbor tells me that
> Wadell does not drink or use drugs at all.

> . . . .

> Indeed, I do not believe this fellow has effectively established that
> he is mentally disturbed to my satisfaction. I think that the most likely
> possibility is that he was being disingenuous.

(Tr. 203) (emphasis added).

When weighing medical opinions, the ALJ has considerable discretion and is free

to reject the opinion of any physician if the evidence supports a contrary conclusion. 20

C.F.R. §§ 404.1527(d)(2), 416.927(d), (e); Greenspan v. Shalala, 38 F.3d 232, 237 (5th

Cir. 1994); Spellman, 1 F.3d at 364; Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.

1990); Milam v. Bowen, 782 F.2d 1284, 1287 (5th Cir. 1986).  The ALJ may give less weight to a physician's opinion when the opinion is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical or laboratory diagnostic techniques, or is otherwise unsupported by the evidence.  Myers, 238 F.3d at 621; Leggett, 67 F.3d at 566; Spellman, 1 F.3d at 364.

In this case, as he is clearly entitled to do, the ALJ weighed conflicting medical opinions and resolved the conflict in favor of Dr. Murphy's opinion that there was at least a 90 percent likelihood that plaintiff was not suffering from an organic brain syndrome but was malingering for secondary gain.  Moore, 919 F.2d at 905 (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)).  Thus, substantial evidence supports the ALJ's conclusion that plaintiff is not suffering from an organic brain syndrome.

Moreover, to satisfy Listing 12.05(C), there must be another impairment, in addition to plaintiff's subaverage intellectual functioning, that imposes additional and significant work-related limitations.  Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000); Holland v. Apfel, 153 F.3d 620, 621 (8th Cir. 1998).  In the absence of another qualifying impairment, Fultz cannot meet the listing.

Although Fultz testified that he suffers from headaches and a swollen ankle and that he is being treated regularly for headaches, the medical evidence does not document

any such physical impairments or treatment.  At the hearing, Fultz produced prescription bottles dated April 18, 2003 for ibuprofen 400 and hydrocodone ADAP, but no medical records document why those medications were prescribed on that date.  However, the same medications were prescribed on December 31, 2002, when an abscess on plaintiff's arm was incised and drained at North Oaks Medical Center in Hammond.  (Tr. 240).  Even if Fultz suffers from headaches and a swollen ankle, the mere presence of an additional, but minor, physical impairment is not sufficient to satisfy the second requirement of Listing 12.05(C).  Johnson, 864 F.2d at 345, 347; Brown v. Bowen, 864 F.2d 335, 340 (5th Cir. 1988).

Fultz has not pointed to substantial evidence that these impairments, or any other physical or mental impairments beyond the learning disorder that the ALJ found, impose additional and significant work-related limitations of function.  The ALJ found that plaintiff's testimony concerning his inability to work because of his headaches and swollen ankle was not credible and, as noted above, no medical evidence substantiates these complaints or their severity.  The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court.  Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir.

19

1991); Villa, 895 F.2d at 1024. The ALJ's explanation of his reasons for finding plaintiff

not entirely credible is all that is required. Falco, 27 F.3d at 163-64; Godbolt v. Apfel,

No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); accord

James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000)

(citing Falco, 27 F.3d at 164).

Accordingly, substantial evidence supports a conclusion that plaintiff did not meet

Listing 12.05(C) at the time of the ALJ's decision.

2.    *Whether the ALJ erred by failing to consider all of plaintiff's*
        *limitations.*

Fultz argues that the ALJ erred by failing to consider all of his limitations and by

disregarding the vocational expert's testimony that "Plaintiff's limitations precluded any

substantial gainful activity." Plaintiff's memorandum, Record Doc. No. 11, at p.9. Fultz

again misstates the evidence. The vocational expert never testified that he was precluded

from working under any of the proposed hypotheticals.

The ALJ posed a hypothetical to the vocational expert that accounted for plaintiff's

age, education, work experience and nonexertional limitations, which the ALJ found to

be credible and substantiated by the evidence. The vocational expert testified that

unskilled jobs are available for an individual with those abilities and restrictions,

including stock and inventory clerk, miscellaneous food preparation occupations, maids

20

and housemen.  (Tr. 261).  Even with the additional limitations proposed by Fultz's attorney, Roberts stated that the availability of miscellaneous food preparation jobs would be reduced by 70 percent, the availability of stock and inventory clerk positions would be reduced by 50 percent and there would be no impact on the availability of housekeeping jobs.  (Tr. 262-63).  Based on this testimony, the ALJ found that plaintiff had the residual functional capacity to perform work as a stocker or in housekeeping.

Plaintiff was represented by counsel at the hearing, and his counsel also questioned the vocational expert.  An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)."  Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994).

In this case, plaintiff's counsel questioned the vocational expert, adding additional limitations that the claimant overestimates his own ability, reacts very poorly to criticism and frustration and has a marked limitation in his ability to deal with a supervisor.  As previously noted, the vocational expert testified that these restrictions would reduce the

availability of miscellaneous food preparation jobs by 70 percent and the availability of stock and inventory clerk positions by 50 percent, but that there would be no impact on the availability of housekeeping jobs. Roberts further testified that a moderate limitation in ability to complete a normal work day and week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods would not create any additional impact beyond the previous hypothetical.

Contrary to plaintiff's argument, the ALJ included in her findings the limitations that plaintiff reacts poorly to criticism and frustration and has a marked limitation in his ability to deal with a supervisor. The ALJ also accepted the opinion of the state agency medical consultant, Brad Williams, Ph.D., that plaintiff has a moderate limitation in his ability to complete a normal work day and week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. (Tr. 15, 220). The ALJ incorporated that limitation in her residual functional capacity findings when she found that Fultz was limited to simple, rote work with only incidental interpersonal contact. Thus, the ALJ and the vocational expert considered all of plaintiff's impairments that are substantially supported by the record.

22

## CONCLUSION

Substantial evidence in the record supports the ALJ'S findings that plaintiff does not meet Listing 12.05 and that he has the residual functional capacity to perform work that is available in significant numbers in the national and state economies.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _2d_ day of December, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

23